UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-20962-CIV-ALTMAN/MATTHEWMAN

LUCIA CASTILLO,

             Plaintiff,

v.

FRANK BISIGNANO[1],
Commissioner of Social Security,

             Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT [DEs 13, 16]

THIS CAUSE is before the Court upon Plaintiff Lucia L. Castillo's ("Plaintiff") Motion for Summary Judgment [DE 13] and Defendant Frank Bisgnano, Commissioner of Social Security's ("Defendant") Motion for Summary Judgment [DE 16]. This matter was referred to the Undersigned by United States District Judge Roy K. Altman. [DE 8]. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff from the time period of July 1, 2020, through December 12, 2023, and whether the correct legal standards have been applied. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## I.    FACTS

On May 2, 2021, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. [R. 24].[2] She also protectively filed a Title XVI application for

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted, therefore, for Lee Dudek (and prior to him, Michelle King, Carolyn Colvin and Martin O'Malley) as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] All references are to the record of the administrative proceeding filed by the Commissioner at Docket Entry 10.

supplemental security income on the same date. [R. 25]. In both applications, Plaintiff alleged disability beginning July 1, 2020. [R. 24]. Plaintiff's claim was initially denied on May 16, 2023, and upon reconsideration on August 29, 2023. [R. 24]. Following a telephonic hearing on March 25, 2024 [R. 50–91], the Administrative Law Judge ("ALJ"), Gracian A. Celaya, issued a partially favorable[3] decision on April 16, 2024, on Plaintiff's request for benefits. [R. 18–49]. Plaintiff filed a request for review, which the Appeals Council denied on February 11, 2025. [R. 1–8].

## A.  Hearing Testimony

The ALJ held a telephonic hearing on March 26, 2024. [R. 50]. Plaintiff was represented by her attorney, Rogelio Oliver Rojas, during the hearing. [R. 50].  A vocational expert, Jeffrey B. Barrett, and a Spanish interpreter were also present. [R. 50].

Plaintiff testified first as follows. She was 55 years old as of the hearing date. [R. 58]. She lived in a rented apartment with her husband. [R. 59]. She was not currently working and was supported by her husband. [R. 59]. Plaintiff completed up to the twelfth grade in school, has never had a driver's license, and has never driven. [R. 59]. Her most recent job was caring for her mother at home from 2017 to 2020, until Plaintiff's mother passed away. [R. 60]. Plaintiff did laundry, cleaned the house, helped her mother bathe, and prepared her meals. [R. 60]. A government agency paid Plaintiff for this work. [R. 59].

Before taking care of her mother, Plaintiff worked in a factory from 2007 to 2017, unpacking and packing plastic bottles, pens, and keyrings. [R. 61]. She did not have to lift anything, but she had to sit all day. [R. 61].

---

[3] *See* n. 4, *infra.*

Plaintiff takes medications on a regular basis for her hypertension, diabetes, thyroid, fibromyalgia, nerves, and asthma. [R. 60-61]. She regularly sees doctors for her primary care, psychiatric issues, arthritis, thyroid, heart, sleep apnea, and fibromyalgia. [R. 62].

Due to her fibromyalgia, Plaintiff feels horrible pain all over her body and muscles. [R. 62]. She sometimes cannot get out of bed and has trouble sitting and standing up. [R. 62]. She considers the pain to be a 6 or 8 out of 10. [R. 62]. Plaintiff takes several medications for the pain, and sometimes it helps for a while; however, the pain and discomfort are always there. [R. 63]. She suffers from fatigue that starts suddenly and dizziness that comes and goes. [R. 63]. She feels dizzy and/or fatigued three to four times per week. [R. 63–64]. The fatigue sometimes lasts all day and prevents Plaintiff from being able to get out of bed. [R. 64]. She also suffers from sleep apnea, but she sleeps with a machine every night, which helps. [R. 64]. Plaintiff's sleep apnea causes shortness of breath and dizziness. [R. 64].

In 2007, Plaintiff had an accident, which resulted in a rod in her right tibia. [R. 64–65]. Due to the broken tibia, Plaintiff's right foot and ankle are always swollen. [R. 65]. Further, she has osteoarthritis in both her right and left knees. [R. 65]. Plaintiff sometimes cannot walk a block because she gets pain in her legs, knees, and back, and she also becomes dizzy. [R. 65]. She cannot stand in a fixed position for more than 3–5 minutes because her left foot and leg are numb most of the time. [R. 65–66]. Plaintiff cannot squat or kneel. [R. 66]. She can only sit in a fixed position without moving for 3–5 minutes, or she feels pain and numbness all over her body. [R. 66].

For the three years prior to the hearing, Plaintiff had been treated by a psychiatrist for anxiety, panic attacks, and depression. [R. 67]. When she feels anxiety, she feels very desperate and like she wants to run away, but cannot. [R. 67]. Plaintiff also feels some pressure on her chest, tachycardia, and shortness of breath. [R. 67]. She feels anxiety daily. [R. 67]. Plaintiff's symptoms

3

negatively affect her relationship with her husband because she wants to be alone in a quiet place, and she feels like no one understands what she is going through. [R. 68]. Plaintiff experiences panic attacks about five times per week and sometimes twice a day. [R. 67]. The panic attacks last between 5 to 10 minutes. [R. 67]. Plaintiff also suffers from depression, which causes a lot of sadness, lack of energy, and lack of interest in things. [R. 68].

Plaintiff no longer has hobbies, interests, or activities that she enjoys doing. [R. 68]. She has two adult children who live elsewhere. [R. 68]. Plaintiff has trouble socializing or getting along with others. [R. 68]. She likes to be alone and does not enjoy going to stores. [R. 68–69]. She has not gone to a market or store for more than four years because she gets panic attacks when she goes outside. [R. 69]. Plaintiff does not watch TV because she cannot understand it. [R. 69]. She sleeps very poorly for three to three and a half hours at a time. [R. 69]. Plaintiff's husband and adult daughter do the household chores. [R. 69–70].

The vocational expert ("VE"), Mr. Barrett, then testified as follows. Plaintiff's main occupation was a "hand packager" and, more recently, she was a home attendant. [R. 72]. The hand packager job would be classified as light work as actually performed by Plaintiff. [R. 72–75]. The ALJ then posed the following hypothetical question for the VE:

> [p]lease imagine a hypothetical individual with the Claimant's medical, education, vocational profile, who's capable of performing the full range of light work with the following additional limitations. Bear with me. All right. This individual can occasionally kneel, crouch, crawl, stoop, and balance;  can frequently climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently handle, finger, and feel; can never be exposed to extreme cold or extreme heat; can never be exposed to unprotected heights or other hazards, such as dangerous machinery; can never be exposed to noxious fumes, odors, or other pulmonary irritants; can follow simple instructions; can frequently interact with co-workers, supervisors, and the public; and can concentrate in two-hour increments without a break. Can that individual perform the Claimant's past work?

[R. 75]. The VE responded that past work would be precluded. [R. 76]. However, the VE found that the person could work as a marker; routing clerk, inspector; or hand packager. [R. 77].

Plaintiff's counsel posed additional hypotheticals to the VE. [R. 80]. First, he asked about an individual with the same vocational background as Plaintiff and the following limitations (based on Exhibit 24E):

> poor, and poor means the ability to function in this area is seriously limited, but not precluded occasionally—that means that the limitation is present at least 30% of the time, maybe up to 50, but let's say 30% of the time in an 8-hour workday— follow work rules, relate to co-workers, deal with the public, interact with supervisors, function in independence, maintain attention, maintain concentration, understand and remember[ ] and carry[ ] out even simple job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. Would a person with those limitations be able to engage in the Claimant's past relevant work?

[R. 82]. The VE responded that such an individual could not maintain a full workday, so there would be no work she could do. [R. 83]. Next, the attorney asked a hypothetical based on Exhibit 5F (the consultative examination report of Beatriz Amador, Psy.D, P.A.) as follows:

> Assume that you have a Claimant with the same vocational background as the Claimant in this case. During an 8-hour workday, the Claimant can only—was rated as poor in being able to pay attention to what she's doing. That means that 30% of the time, she cannot pay attention. Concentration was also rated as poor. That means that 30% of the time, she cannot concentrate. Immediate memory also rated essentially as poor. One third of the words cannot be recalled at all. After a short delay, she was able to remember more, but immediately, only one third of it—of the immediate memories one third, 30% of the time, is not there. Now, I don't know if you can put that in vocational terms … or use it in vocational terms, but insight and judgment are poor. In other words, at least 30% of the time, a judgment as to what she can do is not there. With those limitations, would the Claimant be able to engage in substantial gainful activity?

[R. 83–84]. The VE responded that there would be no work for such an individual. [R. 84].

The attorney additionally provided a hypothetical in which an individual with Plaintiff's vocational background was unable to left up to 10 pounds; was unable to carry up to 10 pounds; and was unable to climb, stoop, crouch, crawl, push or pull; could only sit for 4 hours in an 8-hour

workday; and could only stand or work for 60 minutes in an 8-hour workday. [R. 85]. The VE never clearly responded to this hypothetical.

Finally, the attorney posed a hypothetical based on Exhibit 29F (records from Dr. Sofia Dominguez). This time, the individual could only sit for 4 hours in an 8-hour workday; could only stand or walk for 60 minutes in an 8-hour workday; could only lift 10 pounds occasionally and 5 pounds frequently; could only occasionally bend, stoop, and raise the left or right arm over the shoulder level. [R. 88–89]. The VE explained that "if the individual has insufficient endurance for work activity of the full day, which would be sitting, standing, and walking, there would be no work." [R 89].

B. The ALJ's Decision

The ALJ issued a <u>partially favorable</u>[4] decision on Plaintiff's claim for benefits on April 16, 2024. [R. 18–49]. In doing so, the ALJ explained the five-step sequential evaluation process for determining whether an individual is disabled. [R. 25–26]. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2025, and that Plaintiff had not engaged in substantial activity since July 1, 2020, the alleged onset date. [R. 26]. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: depressive, bipolar, and related disorders; anxiety disorder; fibromyalgia; osteoarthritis; disorders of the spine; and obesity. [R. 26]. However, the ALJ found that Plaintiff's medically determinable impairments of remote history of myocardial infarction and diabetes were non-severe. [R. 27].

At step three, the ALJ found that, since July 1, 2020, Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed

---

[4] Plaintiff alleged disability beginning on July 1, 2020. By "partially favorable", the Court means that the ALJ determined that Plaintiff was not disabled as of July 1, 2020, but was disabled as of December 13, 2023. In this appeal, Plaintiff seeks benefits from July 1, 2020, through December 12, 2023.

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 27]. The ALJ specifically considered

Plaintiff's obesity and mental impairments under the relevant law. [R. 28].

At step four, the ALJ then found that Plaintiff had the residual functional capacity ("RFC")

to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the
> claimant can occasionally kneel, crouch, crawl, stoop and balance. She can
> frequently climb ramps and stairs and can never climb ladders, ropes or scaffolds.
> The claimant can frequently handle, finger and feel. She can never be exposed to
> extreme cold or extreme heat and can never be exposed to unprotected heights or
> other hazards such as dangerous machinery. She can never be exposed to noxious
> fumes, odors or other pulmonary irritants. The claimant can follow simple
> instructions and can frequently interact with coworkers, supervisors and the public.
> She can concentrate in two hour increments without a break.

[R. 29]. The ALJ attested that he had considered all of Plaintiff's symptoms to "the extent to which

these symptoms can reasonably be accepted as consistent with the objective medical evidence and

other evidence," as well as all the opinion evidence and prior administrative medical findings. [R.

29]. The ALJ next followed the two-step process—first, determining if there is an underlying

determinable physical or mental impairment that could reasonably be expected to produce

Plaintiff's pain or other symptoms, and then evaluating the intensity, persistence, and limiting

effects of Plaintiff's symptoms to determine the extent to which they limit her functions. [R. 29].

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this decision." [R. 29]. More

specifically, the ALJ explained that "the consistency of the claimant's allegations regarding

disabling symptoms and limitations, in comparison to the objective evidence, is diminished

because those allegations are greater than expected in light of the objective evidence of the record.

The positive objective clinical findings detailed below do not support more restrictive functional limitations than those assessed herein." [R. 30]. Before summarizing the medical evidence in detail, R. 30–31, the ALJ stated that "Plaintiff's medical history during the relevant period is inconsistent with her allegations of disability due to physical and mental impairments." [R. 30]. He noted that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual. Specifically, the medical evidence of record indicates the claimant received routine and conservative treatment. The lack of aggressive treatment, such as psychiatric hospitalization or inpatient treatment, suggests that claimant's symptoms and limitations were not as severe as the claimant alleged." [R. 33]. Further, "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because although the claimant alleged that she was unable to work due to her mental and physical impairments, the record reflects that she was less limited than she alleged during the relevant period." [R. 33].

The ALJ also considered medical opinions from various medical sources and provided reasoning for finding each opinion either persuasive, unpersuasive, or partially persuasive. [R. 33–35].

At step five, the ALJ found that, from July 1, 2020, through December 12, 2023, Plaintiff was unable to perform any past relevant work, but that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. [R 35–36]. Thus, Plaintiff was not disabled from July 1, 2020, through December 12, 2023. [R. 37]. The ALJ additionally found that, as of December 13, 2023, taking into account Plaintiff's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. [R. 36–37]. Thus, the ALJ concluded that Plaintiff was not disabled prior to December 13, 2023, but became disabled on December 13, 2023, and has continued to be

disabled through the date of this decision. [R. 37]. Further, her disability is expected to last twelve months past the onset date. [R. 37].

## II.    MOTIONS FOR SUMMARY JUDGMENT

In her motion for summary judgment, Plaintiff argues (1) the ALJ's RFC finding is not supported by substantial evidence and (2) the ALJ failed to properly assess Plaintiff's alleged symptoms and limitations. [DE 13]. In response, Defendant asserts that (1) substantial evidence supports the ALJ's assessment of Plaintiff's RFC and (2) substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints. [DE 16]. Plaintiff did not file a timely response to Defendant's motion or a reply in support of her own motion.

## III.    RELEVANT LAW

Judicial review of the factual findings in disability cases is limited to determining whether the Commissioner's decision is "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). Courts may not "decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."

9

*Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (alteration in original) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920 (a)–(f). The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry concludes. 20 C.F.R. § 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If the ALJ finds that claimant does not suffer from a severe impairment or combination of impairments, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. § 404.1520(c).

Step three requires the ALJ to compare the claimant's severe impairment(s) to those in the listing of impairments. 20 C.F.R. § 404.1520(d), subpart P, appendix 1 ("Appendix 1"). Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that, if they are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. *Gibson v. Heckler*, 762 F.2d 1516, 1518 n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the claimant's impairments prevent him or her from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a *prima facie* case of disability is established. 20 C.F.R. § 404.1520(e). The burden then shifts to the ALJ to show at step five that, despite the claimant's impairments, he or she is able to perform work in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(f). In order to determine whether the claimant has the ability to adjust to other work in the national economy, the ALJ may either apply the Medical

Vocational Guidelines, 20 C.F.R. pt. 404 subpart P, appendix 2, or utilize the assistance of a vocational expert. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

## IV.   <u>ANALYSIS</u>

Under the above legal framework, the Court will address the issues raised in this appeal. To resolve these issues, the Court has carefully reviewed the extensive administrative record, including the objective medical evidence, and will discuss the relevant portions as necessary.

### A.   <u>Whether the ALJ's RFC Finding Is Supported by Substantial Evidence</u>

In her motion for summary judgment, Plaintiff claims that the ALJ "grossly overestimates Castillo's RFC because his finding that the claimant can perform light exertional work, which necessarily involves extensive walking and standing, fails to properly account for reasonable limitations relating to the claimant's lumbar and cervical spine, neurological, and bilateral knee impairments." [DE 13 at 6]. Plaintiff also argues that the ALJ "failed to properly assess how Castillo's lumbar and cervical spine, as well as bilateral knee, impairments may have reasonably impacted her RFC for light exertional work when considered in combination with her other impairments, such as her 'severe' fibromyalgia and obesity." *Id.* at 6–7. According to Plaintiff, the ALJ's RFC finding is "deficient because it is not consistent with the medical evidence of record, and the discrepancies are not adequately addressed or explained because the ALJ failed to provide sufficient rationale for effectively rejecting a plethora of objective findings." *Id.* at 7–8.

Plaintiff further asserts that the ALJ "almost exclusively relied on a wholly inadequate characterization of Castillo's subjective complaints" and that the ALJ failed to "sufficiently acknowledge any objective diagnostic or exam findings." *Id.* at 8. Plaintiff argues that the ALJ improperly determined that her bilateral knee impairments were not severe, omitted the neurological findings of the August 2023 neurological evaluation, and ignored certain findings

that "reflect a complex and persistent pattern of spinal impairment." *Id.* at 8–12. Plaintiff concludes that, "[a]t bottom, the ALJ's RFC finding here is necessarily deficient because it does not take into account all limitations arising from all impairments as required by SSR 96-8p." *Id.* at 14.

In response, Defendant claims that substantial evidence supports the RFC assessment and that the ALJ properly "weighed the evidence, including medical evidence, medical opinions and prior administrative medical findings, and Plaintiff's allegations and assessed Plaintiff's RFC based on the ALJ's consideration of the record as a whole." [DE 16 at 4]. Defendant explains that the ALJ considered the findings of the State agency psychological consultants and the State agency medical consultants and gave their opinions appropriate weight. *Id.* at 5–6. He maintains that the ALJ properly considered the medical evidence of record in determining the RFC. *Id.* at 6–7.

Defendant points out that, in her motion for summary judgment, Plaintiff relies on October and November 2023 progress notes documenting her report of chronic neck weakness and pain, but notes that the same exams also show that Plaintiff had a full range of motion in her neck and full strength of the extremities and that the provider only prescribed physical therapy of the upper back. *Id.* at 7. To the extent Plaintiff alleges that the ALJ did not sufficiently consider the August 2023 neurological examination, Defendant responds that the existence of an impairment does not show the extent to which it limits a claimant's ability to work and that ALJs are not required to refer to every piece of evidence in a decision. *Id.* at 7–8. Next, as to Plaintiff's knee impairment, Defendant argues that the ALJ was "not required to identify every severe impairment at step two" and Plaintiff "has not demonstrated that her impairment, whether severe or non-severe, caused limitations that are disabling or more restrictive than those assessed by the ALJ in the RFC finding." *Id.* at 8.

Plaintiff has created three subsections for her first argument, so the Court will follow in

suit.

1.     Plaintiff's Knee Impairments

In her motion for summary judgment, Plaintiff does not contend that the ALJ misstated any

facts. Rather, Plaintiff cites additional evidence which she claims the ALJ failed to consider in his

decision:

> For example, the October 2023 neurological exam performed by Matthew Cummock, M.D., noted objective findings such as "inability to tandem walk" and "mild sway on Romberg test," along with "decreased sensation in right L4-S2 distribution" (Tr. 1234-1235). These findings directly contradict the earlier "normal gait" and "full range of motion" and indicate more significant balance and sensory issues, which could affect Castillo's ability to perform light work on a sustained basis, especially tasks requiring frequent walking or fine manipulation. The ALJ did briefly discuss the October 2023 neurological notes but did not explicitly re-evaluate the RFC against these specific objective findings, relying more on the earlier, more positive Bush exam for physical function.

> In contrast to the ALJ's characterization of the record, however, Castillo reported a history of chronic knee conditions, primarily osteoarthritis, which had been a recurring concern of hers for over five years (Tr. 752, 755, 758, 811, 1124, 1203). She generally described her knee pain as dull, worsening with activity and joint movement, and relieved by rest and medications (Tr. 752, 755, 758, 1203). In May and June 2022, she reported not walking recently due to knee inflammation (Tr. 608, 738). In November 2022, she was assessed with bilateral primary osteoarthritis of the knees and reported improvement in knee pain after physical therapy and daily home exercises (Tr. 758). By December 2022, x-rays showed osteopenia without acute fracture and multifocal osteoarthritis in her knees (Tr. 793). That month, she reported right knee pain that was better, but still had pain worse with ambulation (Tr. 755). Physical examination demonstrated bilateral knee tenderness and crepitus (Tr. 755-756).

> In January 2023, Castillo again complained of right knee pain, with examination revealing minimal effusion in the right knee (Tr. 816). In March 2023, Castillo continued to experience chronic joint pain, primarily in her knees, and was diagnosed with bilateral primary osteoarthritis of the knees) (Tr. 752). She was recommended to follow up with a pain specialist for fibromyalgia and chronic pain (Tr. 813-813). In May 2023, she was diagnosed with localized osteoarthritis of both knees (Tr. 811). In July 2023, she again reported bilateral knee pain (Tr. 1008). She also complained of right knee pain secondary to lumbar degenerative disc disease, and an x-ray confirmed degenerative joint disease in the right knee (Tr. 1129). She was advised to consider a right knee injection, and was diagnosed with right knee pain and degenerative joint disease (Tr. 1129-1130).

In August 2023, she continued to experience right knee pain, and x-ray findings showed multifocal osteoarthritis in the knees (Tr. 1124-1126). The diagnosis of right knee pain due to degenerative joint disease was reaffirmed. *Id*. By October 2023, she reported worsening knee pain over the past nine months, including bilateral knee pain (Tr. 1234). Physical exam findings continued to show bilateral knee tenderness, inability to tandem walk, mild sway on Romberg test, absent reflex in the right knee (Tr. 1234-1235). Later that same month, Castillo was again diagnosed with bilateral primary osteoarthritis of the knee (Tr. 1204). And by November 2023, physical examination demonstrated mild difficulty with tandem gait on exam (Tr. 1254).

Castillo also reported "back pain preventing walking" in March and April 2022 (Tr. 605, 606), and "right knee pain for about a week, which worsened with ambulation" in December 2022 (Tr. 755), suggesting more episodic or fluctuating ambulation limitations than implied by the RFC (Tr. 29).

[DE 13 at 9–11].

In response, Defendant generally rehashes the ALJ's decision and then contends that "[a]s the ALJ acknowledged, the RFC reflected the limitations from all of Plaintiff's impairments, including those that were non-severe (Tr. 27). And Plaintiff has not demonstrated that her impairment, whether severe or non-severe, caused limitations that are disabling or more restrictive than those assessed by the ALJ in the RFC finding (Tr. 28). Substantial evidence supports the ALJ's RFC finding." [DE 16 at 8].

In his decision, the ALJ found, in relevant part, that Plaintiff suffered from the severe impairments of fibromyalgia and osteoarthritis. [R. 26]. Thus, he arguably did make a finding about Plaintiff's knee issues at step two. Regardless, if an ALJ finds one or more severe impairments and proceeds to step three of the evaluation, "there is no need for an ALJ to identify every severe impairment at step two." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). Thus, even if the ALJ did not explicitly mention the knee impairments at step two, that is not reversible error.

Next, while the ALJ "did not need to determine whether every alleged impairment was

'severe,' he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation." *Tuggerson-Brown*, 572 F. App'x at 951. In the case at hand, during later steps of the sequential evaluation, the ALJ noted the following with regard to Plaintiff's knee impairments:

> In July 2023, the claimant was treated by John Serpa, M.D. for right knee and low back pain. (Ex. 19F at 7). She reported stable control of pain symptoms and no adverse side effects from medication. (Id.). The claimant's treatment notes state that she "had been on stable doses of analgesics, and adjuvant medications for many years, occasionally requiring interventional techniques." (Id.). Notably, her weight had decreased to 175 pounds and her BMI was down to 25.25. (Id.).

[R. 27, 32, 33, 34, 35]. The ALJ also explained that, at Plaintiff's October 2023 visit with Carlos Alonso, M.D,

> the claimant reported that her low back and knee pain had existed for over 5 years. (Ex. 25F at 1). She described the pain as dull. Her pain was relieved by rest and medication. (Id.). She also reported that her pain was better after physical therapy and home exercises daily. (Id.).

[R. 32, 34, 35]. Each of these two paragraphs exists verbatim on multiple pages of the decision. The ALJ additionally relied on Dr. Bush's April 2023 clinical findings regarding Plaintiff's ability to stand on one foot, stand on heels and toes, fully squat and stoop, and ambulate without a detectable limp after finding his opinion to not be persuasive. [R. 32, 34 (citing R. 766–71)].

The ALJ concluded that Plaintiff could perform light work[5] as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except Plaintiff could only occasionally kneel, crouch, crawl, stoop and balance; could frequently climb ramps and stairs; and could never climb ladders, ropes or,

---

[5] "A person with an RFC to perform 'light work' can 'lift[ ] no more than 20 pounds at a time [and] frequent[ly] lift[ ] or carry[ ] objects weighing up to 10 pounds,' and such work may involve 'a good deal of walking or standing, or ... sitting with some pushing and pulling of arm or leg controls.'" *Randolph v. Comm'r of Soc. Sec.*, No. 23-13733, 2024 WL 3650237, at *2 (11th Cir. Aug. 5, 2024) (citing *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987); 20 C.F.R. § 404.1567). Social Security Ruling 83-10 provides that "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10.

scaffolds. In other words, the ALJ took into account the evidence of record and made exceptions to the light work designation in the RFC.

An ALJ "is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Dicks v. Colvin*, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016) (citation and quotation omitted). However, "[t]here can be a fine line between evaluating the decision for cherry-picking and reweighing the evidence." *Lozada v. Kijakazi*, No. 22-80867-CIV, 2023 WL 5978082, at *6 (S.D. Fla. Sept. 14, 2023). Here, it is clear that the ALJ considered Plaintiff's knee impairments during his analysis, and Plaintiff does not identify any portion of the ALJ's decision that is factually incorrect; rather, Plaintiff identifies other parts of the records that she believes support her assertions as to her disability. While an ALJ is not permitted to cherry-pick evidence to support his or her conclusions, *Hodgman v. Colvin*, 2016 WL 860260, at *5 (M.D. Fla. Mar. 7, 2016), the Court does not find that the ALJ did so here. Here, despite Plaintiff's arguments to the contrary, it appears to the Court that it is *Plaintiff* who is attempting to "cherry-pick" the evidence that is supportive of her position.

The Court finds that the RFC is supported by substantial evidence. And, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). Here, Plaintiff simply has not met her burden.

### 2.    Plaintiff's Neurological Examination

Plaintiff argues that the ALJ erred in not discussing the "significant neurological evaluation in August 2023." [DE 13 at 11]. She further claims that this "omission is critical, as it provides

recent, objective evidence of cognitive limitations that are more severe than those found by the ALJ." *Id.* at 12.  In response, Defendant contends that the ALJ "properly considered the relevant evidence, and the decision shows the ALJ considered Plaintiff's condition as a whole in evaluating her RFC (Tr. 29-36). See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)." [DE 16 at 8].

The Court has carefully reviewed the treatment notes of Dr. Eugenio Moises Guevara dated August 30, 2023. [R. 1147]. Dr. Guevara recorded Plaintiff's self-reported symptoms, examined her, conducted a depression screening, and interpreted a battery of tests that Plaintiff underwent in 2022 and 2023. [R. 1147–52]. Plaintiff's mental status exam showed all normal results except for abnormal recent memory. [R. 1149]. Dr. Guevara diagnosed Plaintiff with obstructive sleep apnea, transient ischemic attack, transient global amnesia, anterograde amnesia, dizziness and giddiness, fibromyalgia, right knee pain, lumbar radiculopathy, osteoarthritis of the lumbar spine, neural foraminal stenosis of the lumbar spine, cervical herniated disc, depression, hypertension, type 2 diabetes mellitus, and osteopenia. [R. 1152–53]. He noted that Plaintiff had sleep apnea and was not compliant with the treatment. [R. 1158]. In addition to the medications that the doctor prescribed to Plaintiff, he recommended that she follow up with psychiatry, rheumatology, and pain management. [R. 1158].

It is clear that the ALJ did not explicitly discuss this August 2023 evaluation in his decision; however, Defendant is correct that the ALJ is not required to list every piece of evidence. *See, e.g., Lewen v. Comm'r of Soc. Sec.,* 605 F. App'x 967, 969 (11th Cir. 2015) ("[T]he ALJ is not required to discuss every piece of evidence."); *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision ...."). "Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence." *Martin*, 894 F.2d at

1529.

The Court rejects Plaintiff's argument that the ALJ's failure to discuss one particular evaluation should result in remand. First, at step two, the ALJ found that Plaintiff suffers from the following severe impairments: depressive, bipolar and related disorders; anxiety disorder; fibromyalgia; osteoarthritis; disorders of the spine; and obesity. [R. 26]. Several of these diagnoses overlap with the diagnoses in the August 2023 evaluation. Second, in her motion for summary judgment, Plaintiff vaguely asserts that the evaluation provides evidence of Plaintiff's severe cognitive limitations without ever stating what limitations are. Thus, third and most importantly, Plaintiff has offered no explanation to the ALJ or to this Court about why or how these impairments created work-related limitations as required. *See Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 815 (11th Cir. 2017).

### 3.     Plaintiff's Cervical and Lumbar Spine

Plaintiff points out in her motion for summary judgment that she consistently reported "chronic and severe pain in her neck and back, often radiating to her extremities, impacting her ability to walk and causing balance issues (Tr. 605, 606, 748, 758, 1234, 1254)." [DE 13 at 12]. She acknowledges that some exams "described full and painless spinal motion (Tr. 766)," but argues that "other, more recent exams closer to the established onset date (e.g., July, August, October 2023) objectively documented tenderness, decreased range of motion, paresthesia, positive straight leg raise, and significant balance deficits (inability to tandem walk, Romberg sway) (Tr. 755-756, 758, 1161, 1124, 1130, 1164, 1234-1235, 1254)." *Id.* Plaintiff also points out that "[d]iagnostic imaging supports diagnoses of diffuse spondylosis, multilevel degenerative changes, osteoarthritis, foraminal narrowing, and disc bulges in both the cervical and lumbar spine (Tr. 792-793, 1134-1135, 1150-1151, 1180, 1184-1185)." *Id.* According to Plaintiff, the medical

findings, "along with fibromyalgia, lumbar radiculopathy, and cervical herniated disc, reflect a complex and persistent pattern of spinal impairment." *Id.*

> Defendant responds to this evidence as follows:
>
> In challenging the RFC finding, Plaintiff points to the October 2023 and November 2023 progress notes documenting Plaintiff's report of chronic neck weakness with intermittent pain. Pl.'s Br. at 18 (citing Tr. 1234, 1254). However, during the examination in October 2023, she had full range of motion of her neck, and full strength of the extremities, though she had decreased sensation to light touch in the right L4 to S2 distribution (Tr. 1234). In November 2023, the provider prescribed physical therapy of the upper back, including heat, ultrasound and massage, and medications (Tr. 1254). As discussed in the section below, the ALJ considered Plaintiff's subjective complaints but found they were not fully supported by the record (Tr. 29). *See* 20 C.F.R. §§ 404.1529, 416.929.

[DE 16 at 7]. Defendant additionally contends that "[a]s the ALJ acknowledged, the RFC reflected the limitations from all of Plaintiff's impairments, including those that were non-severe (Tr. 27). And Plaintiff has not demonstrated that her impairment, whether severe or non-severe, caused limitations that are disabling or more restrictive than those assessed by the ALJ in the RFC finding (Tr. 28). Substantial evidence supports the ALJ's RFC finding." [DE 16 at 8].

At step two, the ALJ found that Plaintiff suffers from severe impairments of disorders of the spine. [R. 26]. The ALJ next explained that he had "considered all of the listings under sections 1.00, 4.00 and 11.00 and finds that the record does not document the necessary findings called for under those sections." [R. 27]. He then discussed medical evidence pertaining to Plaintiff's cervical and lumbar impairments. [R. 30–33]. The ALJ also found that the opinions of the State agency medical consultants were "less persuasive" because Plaintiff was actually more limited during the relevant period than they opined. [R. 34]. In creating Plaintiff's RFC, the ALJ accounted for Plaintiff's limitations by determining that she could perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except she could only occasionally kneel, crouch, crawl, stoop and balance; could frequently climb ramps and stairs; and could never climb ladders, ropes, or

scaffolds.

Seemingly, Plaintiff is again cherry-picking the evidence and improperly asking this Court to reweigh the evidence. Moreover, the Court can see in the ALJ's decision that the ALJ reviewed the evidence relied on by Plaintiff to assess her medical condition as a whole. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). While Plaintiff may suffer from adverse symptoms due to her impairments, the Court must affirm the ALJ's findings supported by substantial evidence even "if the evidence preponderates against" the ALJ's conclusions. *Martin*, 894 F.2d at 1529. Here, the Court concludes that Plaintiff has failed to show a lack of substantial evidence supporting the ALJ's findings.

### B.  Whether the ALJ Failed to Properly Assess Plaintiff's Alleged Symptoms and Limitations

Plaintiff asserts that, "[w]hile the ALJ noted periods of improvement, the record frequently documents fluctuating and persistent severe symptoms, particularly regarding her mental health and pain." [DE 13 at 15]. She contends that her "self-reported symptoms and limitations are entirely consistent with her own hearing testimony as well as her treating and examining sources' findings and opinions, and her allegations of disabling impairments should not have been discounted to the extent the ALJ did so in the crafting of his rationale." *Id.* at 19.

Defendant responds that the ALJ "partially credited Plaintiff's subjective statements" and properly considered Plaintiff's treatment history and the objective examination findings to evaluate Plaintiff's complaints. [DE 16 at 10–11]. He concludes that, "[e]ven if this Court disagrees with the ALJ's resolution of the factual issues, and would resolve those disputed factual issues differently, the ALJ's decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole." *Id.* at 13.

To evaluate pain, the Agency regulations state in relevant part: "we consider all your symptoms, including pain," but "statements about your pain … will not alone establish that you are disabled." 20 C.F.R. § 404.1529(a). The first step for the ALJ is to assess whether a medically determinable impairment is present that could reasonably be expected to produce a claimant's pain symptoms. 20 C.F.R. § 404.1529(b). If an impairment is present, the ALJ proceeds to step two to "evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [the claimant's] symptoms limit [their] capacity for work." 20 C.F.R. § 404.1529(c)(1). The regulations then list evidence the ALJ will consider at this step, including objective medical evidence, the claimant's daily activities, the location, duration, frequency, and intensity of the pain, and pain relief treatment. 20 C.F.R. § 404.1529(c)(2)–(3). The ALJ will then "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence[.]" 20 C.F.R. § 404.1529(c)(4).

The Eleventh Circuit has also established a three-part "pain standard" to be utilized by the ALJ when a claimant tries to "establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F. 2d 1221, 1223 (11th Cir. 1991). The standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* Further, "[t]he claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Id.* The ALJ must specifically explain why he or she is deciding to discredit such testimony, and "[f]ailure to articulate the reasons for discrediting subjective pain testimony requires, as a matter

of law, that the testimony be accepted as true." *Id.*

The Court finds that the ALJ properly evaluated Plaintiff's pain symptoms, and the evaluation is supported by substantial evidence. The ALJ noted that he had considered all of Plaintiff's symptoms to "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as all the opinion evidence and prior administrative medical findings. [R. 29]. The ALJ next followed the two-step process—first, determining if there is an underlying determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms, and then evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit her functions. [R. 29].

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [R. 29]. More specifically, the ALJ explained that "the consistency of the claimant's allegations regarding disabling symptoms and limitations, in comparison to the objective evidence, is diminished because those allegations are greater than expected in light of the objective evidence of the record. The positive objective clinical findings detailed below do not support more restrictive functional limitations than those assessed herein." [R. 30].

Before summarizing the medical evidence in detail, R. 30–31, the ALJ stated that "Plaintiff's medical history during the relevant period is inconsistent with her allegations of disability due to physical and mental impairments." [R. 30]. He noted that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual.

Specifically, the medical evidence of record indicates the claimant received routine and conservative treatment. The lack of aggressive treatment, such as psychiatric hospitalization or inpatient treatment, suggests that claimant's symptoms and limitations were not as severe as the claimant alleged." [R. 33]. Further, "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because although the claimant alleged that she was unable to work due to her mental and physical impairments, the record reflects that she was less limited than she alleged during the relevant period." [R. 33].

The ALJ then evaluated the persuasiveness of the medical opinions provided by State agency psychological consultants George Grubbs, Psy.D.; and Brian McIntyre, Ph.D.; State agency medical consultants Bradely Stephan, M.D., and Gary Smith, M.D.; Orlando Santana, M.D.; Vladimir Padron, M.D.; Sofia Dominguez, M.D.; Beatriz Amador, Psy.D.; and Clinton G Bush, M.D. [R. 34-35].

Here, upon review of the ALJ's very fulsome discussion of the record, it is clear that substantial evidence in the record supports the ALJ's evaluation. Thus, the Court will not disturb the ALJ's determination. *See Mitchell.*, 771 F.3d at 782; *Dyer*, 395 F.3d at 1212 ("[T]he ALJ considered [the plaintiff's] activities of daily living, the frequency of his symptoms, and the types and dosages of his medications, and concluded that [the plaintiff's] subjective complaints were inconsistent with his testimony and the medical record. The ALJ thus adequately explained his reasons and it was reversible error for the district court to hold otherwise."); *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("[T]he ALJ made a reasonable decision to reject [the plaintiff's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so."). Plaintiff does not identify any portion of the ALJ's decision that is actually factually incorrect, but rather she identifies other parts of the records that she believes support her assertions

as to her disability. And, she has failed to show the absence of substantial evidence supporting the A''s conclusion. Thus, the ALJ's decision is due to be affirmed.

## V.   CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** as follows:

1.  The Court finds that the record contains substantial evidence to support the denial of benefits to Plaintiff. Thus, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

2.  Accordingly, the Court recommends that Plaintiff's Motion for Summary Judgment [DE 13] be **DENIED**, and Defendant's Motion for Summary Judgment [DE 16] be **GRANTED**.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Roy K. Altman. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers at West Palm Beach in the Southern District of Florida, this 13th day of January 2026.

WILLIAM MATTHEWMAN
Chief United States Magistrate Judge